UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MONTEGUT PROPERTIES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3134** |
| **LLOYDS OF LONDON, ET AL.** | **SECTION: "C" (4)** |

## REPORT & RECOMMENDATION

Before the Court is **Motion for Involuntary Dismissal (R. Doc. 93)**, filed by Defendant, Liberty Corporate Capital, Ltd. ("Liberty"), seeking an Order from the Court involuntarily dismissing all Plaintiff, Montegut Properties, LLC's ("Montegut") claims against Liberty in the captioned litigation. The Motion is before this Court on referral from United States District Judge, Helen G. Berrigan, who partially denied Liberty's Motion for Involuntary Dismissal and partially referred Liberty's Motion to this Court.[1] (R. Doc. 105.) In its Order, the District Court notified Liberty that any issues arising out an Order of this Court "should be presented first to the Magistrate Judge." (R. Doc. 105.)

### I. Background

On June 5, 2007, Montegut instituted this breach of contract action against Defendant,

---

[1] In its Order, the District Court stated that "the motion for involuntary dismissal as it relates to any order of the Magistrate Judge is REFERRED to the Magistrate Judge for determination, including Report and Recommendation if appropriate. (R. Doc. 105.) Under 28 U.S.C. § 636(b)(1)(B), a District Court Judge may designate a Magistrate Judge to "submit to [the District Court Judge] proposed findings of fact and recommendations for the disposition" of motions to dismiss. *See* 28 U.S.C. § 636(b)(1)(B) (2006); *see also* § 636(b)(1)(A) (noting that generally, Magistrate Judges may not determine motions to dismiss).

Lloyds of London ("Lloyds"), seeking damages for Lloyds's alleged breach of their contract to insure Montegut's property, (R. Doc. 1, ¶ XXVI) after Montegut's property was allegedly totally destroyed in the wake of Hurricanes Katrina and Rita. (R. Doc. 1, ¶ IX.) Montegut claimed that the damages "caused by wind and rain [] sustained prior to any flooding of the area; [] amounted to $600,000.00. (R. Doc. 1, ¶ XXXIX.) Montegut further claimed that flying debris penetrated the walls of the property, allowing rain to saturate the walls, insulation, and contents of the property. (R. Doc. 1, ¶¶ XXXXI-XXXXII.) Montegut also alleged that as a result of the damage to its property, it incurred "additional living expenses of $20,000.00," debris removal expenses equivalent to $37,177.30, and mold removal expenses equivalent to $22,306.38. (R. Doc. 1, ¶¶ XXXVIII, XXXXIV.)

On April 29, 2008, Montegut filed a First Amended Complaint adding Liberty as a Defendant and alleging a breach of an insurance contract against Liberty. (R. Doc. 49, ¶ XXVI.)

On March 19, 2008, Defendants, Certain Underwriters at Lloyd's Subscribing to Policy No. 257405 ("the Underwriters"), propounded Interrogatories and Requests for Production on Montegut. (R. Doc. 93-4, Ex. 1.) On October 31, 2008, the Underwriters filed a Motion to Compel Discovery (R. Doc. 59), "seeking an Order from this Court compelling the Plaintiff, Montegut Properties, LLC ("Montegut"), to respond to its Interrogatories and Requests for Production . . . ." (R. Doc. 77.) On November 14, 2008, Montegut responded to the Underwriters' Interrogatories and Requests for Production. (R. Doc. 70-2, Ex. C.) However, many of Montegut's responses referred to other documents, indicated discovery was not complete, or referenced "attached" documents that allegedly were not attached to Montegut's responses. (R. Doc. 70-2; R. Doc. 77, p. 3.)

On March 12, 2009, this Court granted the Underwriters' Motion, noting that Montegut's

responses to the Underwriters' Interrogatories and Requests for Production were "woefully inadequate." The Court specifically identified responses to Interrogatories 1, 2, 4, 5, 12, and 15-20 and Request for Production 4-6, and 16 as inadequate because they noted "discovery is incomplete" in response to the Underwriters Interrogatories and Requests for Production. (R. Doc. 77, p 3.) The Court also noted that Montegut's responses were "riddled with references to other documents, including Montegut's claims file" and that it was "unclear whether this file has been produced." (R. Doc. 77, p. 3.) The Court continued, stating that Montegut's responses contained "the phrase 'see attached' in its response to the majority of the Requests for Production," but that "based on counsel for Underwriters' representation, no such documents were attached to the [response] and, to date, no supplementation has taken place." (R. Doc. 77, p. 3.)

On the same day[2] that the Court issued its Order, Montegut filed Supplemental Responses (R. Doc. 93-5, Ex. 2) to the Underwriters' Interrogatories and Requests for Production. In its Supplemental Response, Montegut alleged that it had "personally brought three (3) boxes to counsel's office; to which he referenced "to defense counsel" and "pulled all pertinent documentation . . . regarding the case" and that any other documents "in said three (3) boxes are irrelevant." (R. Doc. 93-5, Ex. 2, pp. 1-2.) Montegut also contended that it had sent bank statements relevant to repairs and invoices for repairs to the Underwriters as attachments to its November 14, 2008, responses. (R. Doc. 93-5, Ex. 2, p. 2.)

Liberty now seeks an Order from this Court to involuntarily dismiss Montegut's claims based on Montegut's failure to comply with the Court's Order. (R. Doc. 93-3, p. 1.) Liberty styles it

---

[2] Montegut's Certificate of Service indicates that the responses were served March 12, 2008, however, the Court's records indicate that it was filed March 12, 2009, and logically, Montegut's Supplemental Responses could not have been filed before its initial responses, which were filed November 14, 2008.

Motion for Involuntary Dismissal as a Federal Rule of Civil Procedure ("Rule") 41(b) claim for dismissal based on Montegut's alleged failure to prosecute and failure to comply with a Court Order. (R. Doc. 93, p. 1.) Liberty contends that Montegut's refusal to comply with the Court's Order and other delays caused by Montegut justify involuntary dismissal under Rule 41(b). (R. Doc. 93-3, pp. 3-4.)

Montegut opposes the motion, stating that Liberty has received all discovery to which it is entitled. (R. Doc. 99, p. 1.) It therefore urges that this Court deny Liberty's Motion for Involuntary Dismissal. (R. Doc. 99, p. 5.)

However, the District Court denied Liberty's Motion under 41(b). (R. Doc. 105.) Further, the Court referred Liberty's Motion to this Court for determination as it relates to any Order of this Court. (R. Doc. 105.)

## II.  **Standard of Review**

As far as Liberty's Motion relates to this Court's Discovery Order issued March 12, 2009, (R. Doc. 77) this Court will deal with the Motion under Rule 37, which is the appropriate avenue to seek sanctions against a party for failure to comply with a discovery order. Rule 37(b)(2)(A) provides:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;

4

> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).

The District Court recently discussed what the Court will consider when dealing with a request for dismissal under Rule 37(b)(2)(A). *See Quintero v. Balboa Ins. Co.*, No. 08-1527, 2009 WL 382506, at *2 (E.D. La. Feb. 11, 2009). The Court explained:

> To support a dismissal under Rule 37(b), the Fifth Circuit requires a finding of bad faith or willful conduct, as well as a finding that other factors exist. First, dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not the inability to comply. Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Id.*

## III. Analysis

Liberty argues that dismissal is an appropriate sanction because Montegut failed to obey an Order of this Court and has engaged in "contumacious conduct," causing un-excused delays. (R. Doc. 93-3, p. 1.) Liberty notes that this Court found Montegut's responses to Interrogatories and Request for Production of Documents filed by Liberty's counsel of record[3] "woefully inadequate"

---

[3] The Court notes that the Court's Order from March 12, 2009, grants Certain Underwriters at Lloyd's Subscribing to Policy No. 257405's ("the Underwriters")Motion to Compel Discovery. (Doc. 77, p. 4.) Liberty only notes that it shares counsel with the Underwriters, without explaining how the Court's Order compelling discovery responses to the Underwriters' motion entitles Liberty to involuntary dismissal based on Montegut's failure to

and that this Court detailed the deficiencies in Montegut's responses. (R. Doc. 93-3, p. 2; R. Doc. 77, p. 3.) Liberty alleges that Montegut made no attempt to comply with the Court's Order. (R. Doc. 93-3, p. 3.) Liberty contends that Montegut's failure to comply with this Court's Order and other alleged dilatory conduct of Montegut justifies involuntary dismissal. (R. Doc. 93-3, pp. 6-7.)

Liberty claims that Montegut's Supplemental Response provided:

none of the information sought in Liberty's Interrogatories regarding such issues as the basis of expert opinions, the Plaintiffs prior insurance claims, the alleged purchase price, depreciation and alleged value of the property damaged, the alleged components of Plaintiff's "proof of loss" or the nature of any evidence supporting the allegations set forth in the Plaintiff's Petition for Damages.

(R. Doc. 93-3, p. 3.) Liberty alleges that Montegut similarly failed to provide proof of loss and cause of loss in its supplemental response to Liberty's Requests for Production. (R. Doc. 93-3, p. 3.)

In response, Montegut claims that it produced all the information Defendants asked for in its initial disclosures[4] and that Liberty is not entitled to receive any further information. (R. Doc. 99, p. 1.) Montegut asserts that the only two discovery issues still outstanding are: (1) "defendant's demand to be provided with an entire box" of largely irrelevant papers even though Montegut stated that all relevant documents had been provided, and (2) "defendant's desire to depose . . . Max Johnson (but not until after defendant was satisfied it first had received all of plaintiff's discovery responses). (R. Doc. 99, pp. 2.)

As to the first issue, Montegut claims that it asked Liberty for a more detailed description

---

comply with that Order. However, because this Court decides the instant motion on other grounds, the Court will not analyze this deficiency in Liberty's Motion for Involuntary Dismissal.

[4] The Court was unable to locate a copy of Montegut's Rule 26 Initial Disclosures to verify Montegut's contentions.

of the information sought, and received no response. (R. Doc. 99, p. 3; R. Doc. 99-2, Ex. A, p. 7.) As to the second issue, Montegut contends that it has attempted to set deposition dates, but Liberty has been unwilling to agree to a time. (R. Doc. 99, p. 3; 99-2, Ex. A, pp. 1, 4-8.) Montegut also responded to Liberty's specific concerns regarding its supplemental response by stating that it provided "(1) a detailed itemized damage estimate, and (2) a detailed, narrative descriptive proof of loss, (3) an itemized 'Total Loss Recap Summary,' and (4) a CD containing digital photographs of plaintiff's property." (R. Doc. 99, p. 4.) Montegut admitted that, due to a clerical oversight, it mistakenly referred to a contents list in its response to Liberty's interrogatory regarding the value of the contents of a commercial building owned by Montegut, but indicated that no such contents list exists. (R. Doc. 99, p. 5.)

In Liberty's Motion for Involuntary Dismissal, it did not seek any sanction except dismissal. As the Court in *Quintero* noted, "dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." 2009 WL 382506, at *2. Here, Liberty first asked for the most drastic sanction, therefore, it is impossible to tell whether less drastic sanctions would have effectively induced Montegut's compliance with this Court's Order.

Liberty relies on *Wilson v. Rentway, Inc.*, 2004 WL 288531 (N.D. Tex. 2004), for the proposition that involuntary dismissal is appropriate where a party's supplemental responses to discovery fail to satisfy a court's order. In *Wilson*, the plaintiff was ordered to produce documents and respond to requests, but the plaintiff submitted late incomplete responses or did not answer the questions asked. *Id.* at *1. The Court found that because the plaintiff failed to comply with the Order of the Court and no other sanctions would address plaintiff's failures, dismissal was an

7

appropriate sanction under Rules "16(f), 37(b)(2)(C), 37(d), & 41(b)." *Id.*

However, this case is distinguishable from *Wilson* on the facts. Here, the record does not clearly indicate that Montegut has engaged in contumacious conduct designed to unnecessarily delay the proceedings or that Montegut refused to comply with Court Orders. Liberty claims that Montegut "has failed to comply with several orders," but only specifically mentions this Court's March 12, 2009, Order, and that Montegut's conduct forced the District Court to upset the discovery deadline and extend the trial date. (R. Doc. 93-3, p. 6.)

The District Court did order a show cause hearing for Montegut to explain "why this matter should not be dismissed for failure to prosecute." (R. Doc. 87) However, counsel for Montegut appeared at the show cause hearing and explained that it did not comply with the Court's Order to sign the pretrial order by April 17, 2009, (R. Doc. 87) because counsel had recently moved and was having trouble with telephone and internet access. (R. Doc. 89.) The District Court held that the Order to show cause was satisfied and continued the trial. (R. Doc. 89.) Therefore, as to any continuance of the trial date, the District Court already ruled that Montegut appropriately showed cause as to why it did not comply with the Court's Order.

As to this Court's March 12, 2009, Order; after a thorough review of the record, the Court is not convinced that Montegut failed to comply with this Court's Order. The Order did state that Montegut's initial responses were inadequate. However, on the same day the Order was issued, Montegut supplemented its responses and indicated that is had provided all documents relevant to its claim. (R. Doc. 93-5.) To the extent that Liberty desires more information, Montegut claims,

with support from a faxed letter,[5] (R. Doc. 99-2, Ex. A, p. 7) that it asked Liberty to specify what information it still desired, but did not receive a response from Liberty. (R. Doc. 99, p. 3.) Liberty did not contest this claim. The record does not reveal a pattern of contumacious conduct by Montegut or a failure to comply with a Court Order that would justify involuntary dismissal for failure to comply with a discovery order.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Liberty's **Motion for Involuntary Dismissal (R. Doc. 93)** be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 3rd day of September 2009.

JUDGE KAREN ROBY
UNITED STATES MAGISTRATE JUDGE

---

[5] The Letter States: "With regards to the Production of Documents, please specify in detail the documentation and information pertaining to repairs of the property at issue that you are requesting . . . ." (R. Doc. 99-2, Ex. A, p. 7.)

9